UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| HORACE B. NELSON, SR., | CASE NO. 5:22-CV-115-KKC |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| AZIYO BIOLOGICS, INC., *et al.*, | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant DCI Donor Services, Inc.'s Motion for Summary Judgment (DE 72) and Supplemental Motion for Summary Judgment. (DE 95.) Now that the issues are briefed, these motions are ripe for the Court's review.

**I.**

This action is a product liability and personal injury suit involving FiberCel Fiber Viable Bone Matrix ("FiberCel"), a surgical implant made from human tissue. This product is manufactured by Aziyo Biologics, and distributed by Medtronic Sofamor Danek USA, Inc. and subsidiary SpinalGraft Technologies LLC. As the basis of this action, Plaintiff Horace B. Nelson, Sr. ("Nelson") alleges that the FiberCel implanted into him during a lumbar fusion operation was contaminated with tuberculosis (TB), causing him to contract the disease and require additional medical care. Nelson further alleges that the human tissue donor product involved in this case was harvested by DCI Donor Services, Inc. and New Mexico Donor Services (collectively, "DCIDS"). He brings five claims against DCIDS: (1) negligence; (2) breach of express warranty; (3) medical monitoring; (4) fraudulent omission; and (5) punitive damages. (DE 55 at 14–22.)

DCIDS has moved the Court for summary judgment on three grounds: (1) that

DCIDS is entitled to immunity under Kentucky's Anatomical Gift Act, KRS § 311.1911 to § 311.1959; and (2) that Nelson's claims are precluded under Kentucky's Blood Shield Statute, KRS § 139.125. (DE 72 at 5, 9.) DCIDS also asserts that Nelson's fraudulent omission claim fails because it was under no duty to disclose in this matter. (*Id.* at 12.) Because DCIDS has immunity under Kentucky's Anatomical Gift Act, the Court will decline to address its other arguments.

## II.

A district court will grant summary judgment when the moving party shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party carries this burden, the burden of production shifts to the nonmoving party to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322.

At the summary judgment stage, the Court does not weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Further, the Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, this Court determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

Kentucky's Anatomical Gift Act (hereinafter, "the Act") provides that: "A person that acts in accordance with [the Act] or with the applicable anatomical gift law of another state,

or attempts in good faith to do so, **is not liable for the act in a civil action**, criminal prosecution, or administrative proceeding." KRS § 311.1943(1). Neither party disputes that this statutes does, in fact, convey immunity if DCIDS either acted in accordance with the Act or attempted to in good faith.

Arguing against this application of immunity, Nelson asserts that DCIDS did not act in good faith—and that, regardless, the question of good faith is a question of fact for a jury. He primarily cites to statistical evidence regarding TB rates in Mexican-born individuals and the lack of testing for TB on the relevant donor product to argue that a genuine dispute about whether DCIDS acted in good faith exists. (DE 78 at 4–5, 8.) Specifically, he asserts that data shows there is a higher TB rate in Mexican-born individuals and that should have put DCIDS on notice for the disease. (*Id.*)

Yet this argument jumps past the initial question: Did DCIDS act in accordance with the Act? The record demonstrates that DCIDS did just that. Nelson does not dispute that DCIDS constitutes a "person" under the Act. *See* KRS § 311.1911(19) (defining a "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, government or governmental subdivision, agency, instrumentality, or any other legal or commercial entity[.]"). As part of the organ donation process, the Act states that an Organ Procurement Organization's role includes conducting any reasonable examination to ensure the medical suitability of the body or part for its intended purpose. *Id.* § 311.1935(3).

Here, DCIDS is an Organ Procurement Organization (OPO), which is regulated under 42 C.F.R. § 486.301 through § 486.348. Federal regulations state that that an OPO must "[a]rrange for the screening and testing of the potential donor for infectious disease **according to current standards of practice**, including testing for the human

3

immunodeficiency virus." 42 C.F.R. § 486.344(c) (emphasis added). DCIDS notes that its "current standards of practice" are governed "by the Organ Procurement and Transplantation Network (OPTN), Center for Disease Control and Prevention (CDC), and the Food and Drug Administration (FDA)." (DE 72 at 3.) It further asserts that: (1) OPTN and CDC require OPOs to test for human immunodeficiency virus (HIV), hepatitis B virus (HBV), hepatitis C virus (HCV), syphilis, cytomegalovirus (CMV), Epstein Barr Virus (EBV), and toxoplasmosis (deceased donors only); and (2) FDA require tissue and eye banks to test for risk associated with HIV, HBV, HCV, and syphilis, but live tissue donors must also be tested for West Nile Virus. (*Id.*) DCIDS contends, as a result, that the current standards of practice do "not require[] [DCIDS] to test for TB[.]" (*Id.* at 4.)

Significantly, Nelson does not dispute any of the above requirements. He, instead, cites to the statistical data regarding TB rates to argue that DCIDS was "on notice that testing for this potentially fatal disease was necessary to protect the public from outbreaks[.]" (DE 78 at 5.) He uses these statistics to further argue that DCIDS did not act in good faith and thus is not entitled to immunity. (*Id.* at 6.) But Nelson fails to point to any provision of the Act or federal regulations that DCIDS violated in this matter. Again, a plain reading of the statute creates two instances in which immunity attaches: (1) where a person acted in accordance with the Act; and (2) where a person failed to act in accordance with the act, but nevertheless acted in good faith. KRS § 311.1943(1). The Court need not delve into the "good faith" inquiry because the record shows that DCIDS **did** act in accordance with the Act. Accordingly, DCIDS is entitled to immunity in this matter.

### III.

For the aforementioned reasons, the Court hereby ORDERS as follows:

1)      Defendant DCI Donor Services, Inc.'s Motion for Summary Judgment

4

(DEs 72, 95) is GRANTED; and

2)     judgment is ENTERED in favor of Defendants DCI Donor Services, Inc. and New Mexico Donor Services on all claims asserted against them.

This 15th day of July, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

5